**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DOMINGOS S. FERREIRA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 06-CV-0163-CVE-SAJ |
| | ) |
| **TIM HARRIS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**OPINION AND ORDER**

Now before the Court are the following motions: Defendants' [Woodland View Congregation of Jehovah's Witnesses, Harry Fennell, Marcus Hauge, Bill Cooper] Motion to Dismiss and Brief in Support (Dkt. # 29), Defendant City's Motion to Dismiss (Dkt. # 31), Motion to Dismiss of Defendant Tim Harris, in his Official Capacity and Brief in Support (Dkt. # 33), and Plaintiff's First Amended Motion for Preliminary Injunction (Dkt. # 28).

**I.**

Plaintiff has belonged to the Jehovah's Witnesses since 1975 and he has attended the Woodland View Congregation of Jehovah's Witnesses ("Woodland View") since 1989. He was appointed to serve as a ministerial servant in 1999. Beginning in April 2001, plaintiff formed the belief that God selected him as an "other sheep." He expressed this belief to church officials and elders at Woodland View, who attempted to dissuade plaintiff from continuing to profess his anointed status. Church officials Marcus Hauge, Bill Cooper, and Mack Redo asked plaintiff to resign his position as a ministerial servant, but plaintiff declined.

Woodland View held a meeting with plaintiff and a regional church official to further discuss the matter. On May 17, 2002, Hauge, Cooper, Redo, and the regional overseer asked plaintiff to

recant his claim that he was an "other sheep." When it became clear that plaintiff would not reconsider his belief, the committee deliberated and informed plaintiff that he had been disfellowshipped. Plaintiff appealed this decision within the church hierarchy, but the members of the judicial committee denied his appeal. On May 30, 2002, Woodland View informed its congregation of plaintiff's disfellowship. Plaintiff continued to attend services, even though the church would not officially recognize him as a member.

On January 12, 2003, Woodland View officials requested that plaintiff sit in the back of the church during services. On March 17, 2003, the church rescinded its "implied invitation" allowing plaintiff to attend church services and asked plaintiff to leave the church voluntarily. Plaintiff refused to leave. Woodland View called the City of Tulsa Police Department to remove plaintiff from the premises and he was arrested for trespassing. Plaintiff was found guilty of violating City of Tulsa Revised Ordinance tit. 27, § 2106 for trespassing on private property. Even after the arrest, plaintiff still attempted to attend church services. The City of Tulsa ("the City") has documented eight trespassing charges against plaintiff which all resulted in guilty verdicts. The District Attorney's office twice charged plaintiff with violations of Okla. Stat. tit. 21, § 915 for disrupting a religious meeting.

Plaintiff has brought eight claims in his amended complaint against Woodland View and its trustees, the City, and the City's district attorney, Tim Harris ("Harris"). He alleges that all defendants violated his First Amendment right to enjoy the free exercise of his chosen religion, as well as violations of Article I, section 2 of the Oklahoma Constitution. Plaintiff claims the defendants infringed his freedom to associate under the First Amendment. As to the trespassing statutes, plaintiff claims the trespassing statutes are unconstitutionally vague, violate the Free

2

Exercise and Establishment Clauses of the First Amendment, and deny plaintiff the equal protection of the law. Plaintiff alleges that the City has improperly used municipal funds to support a religious group in violation of the Establishment Clause. He states that all defendants lack the "scriptural, ecclesiastical, and constitutional authority" to restrain plaintiff from attending Woodland View, and finally that the conduct of each defendant violates 42 U.S.C. §§ 1983 and 1985.

## II.

A motion to dismiss is properly granted when it appears beyond doubt that plaintiff could prove no set of facts entitling him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ramirez v. Department of Corrections, 222 F.3d 1238, 1240 (10th Cir. 2000). For purposes of making this determination, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. Id. However, the Court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Board of County Commissioners, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "The issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims." Cooper Mfg. Corp. v. Home Indem. Co., 131 F. Supp. 2d 1230, 1232 (N.D. Okla. 2001).

## III.

Defendants have all argued that the Church Autonomy Doctrine recognized by the Tenth Circuit prohibits this Court from hearing plaintiff's claims. Plaintiff responds by claiming that Harris and the City violated the Church Autonomy Doctrine by prosecuting him for trespassing and prevented him from pursuing his choice of religion. Plaintiff alleges that "the disfellowshipping action is a purely ecclesiastical controversy that has no place in a court of law." First Amended Verified Complaint (Dkt. # 27), at 16. United States Supreme Court and Tenth Circuit precedent

forbid this Court from hearing any part of plaintiff's lawsuit that would infringe on matters of faith or internal church policy.

The Supreme Court has clearly established that the Free Exercise and Establishment Clauses of the First Amendment prohibit judicial interference in ecclesiastical matters. <u>Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America</u>, 344 U.S. 94 (1952); <u>Gonzalez v. Roman Catholic Archbishop of Manila</u>, 280 U.S. 1 (1929); <u>Watson v. Jones</u>, 80 U.S. 679 (1871). "In the absence of fraud, collusion, or arbitrariness, the decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive . . . ." <u>Gonzalez</u>, 280 U.S. at 16. If the dispute before the court can not be resolved without "extensive inquiry . . . into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity . . . ." <u>Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milvojevich</u>, 426 U.S. 696, 709 (1976). The First Amendment provides courts a limited role in resolving internal church matters, and prohibits courts from resolving church disputes based on religious doctrine and practice. <u>Jones v. Wolf</u>, 443 U.S. 595, 602 (1979).

In <u>Bryce v. Episcopal Church in the Diocese of Colorado</u>, 289 F.3d 648 (10th Cir. 2002), Lee Ann Bryce was a youth minister at St. Aidan's Episcopal Church. Bryce and her partner, Sara Smith, participated in a civil commitment ceremony at a church that agreed to formally recognize their same-sex union. St. Aidan's fired Bryce for violating church doctrine, which rejected "homosexual practice as incompatible with Scripture . . . ." <u>Id</u>. at 652. Bryce and Smith sued St. Aidan's and other defendants for allegedly violating their constitutional rights and brought claims

4

for sexual harassment. The Tenth Circuit held that federal courts may not review internal church disputes "involving matters of faith, doctrine, church governance, and polity." Id. at 655. The threshold inquiry under Church Autonomy Doctrine is for the court to consider if the actions complained of are "rooted in religious belief." Id. at 657. Judicial intervention would have been inappropriate in Bryce, because the church's decision was rooted in religious doctrine and church policy.

The law is clear that this Court may not review Woodland View's decision to exclude plaintiff based on the church's decision to shun him. Plaintiff was disfellowshipped on a purely religious basis because his claim to be an "other sheep" qualified as apostasy under church policy. Plaintiff's exclusion from Woodland View is a matter solely left to the discretion of the church. However, simply because the Court can not review Woodland View's exclusion of plaintiff does not mean that all civil laws are inapplicable to the parties. The church has rights of free exercise and association as well, and can call upon the City to enforce civil trespass laws without entangling the City in an internal religious dispute. Downie v. Powers, 193 F.2d 760, 765 (10th Cir. 1952). Disfellowship is a constitutionally protected activity; it would violate Woodland View's First Amendment rights not to apply civil trespass laws to protect its legitimate interest in excluding a former member that had violated church policy. See Paul v. Watchtower Bible & Tract Society of New York, Inc., 819 F.2d 875 (9th Cir. 1987).

The Court has no basis to consider the propriety of plaintiff's disfellowship under church doctrine.[1] However, the City and the state of Oklahoma can certainly enforce their laws to keep the

---

[1] This appears to be the only claim brought directly against Woodland View. Woodland View is not a state actor and plaintiff's constitutional claims can be brought only against government entities or officials.

5

peace without violating plaintiff's constitutional rights. Count seven of plaintiff's amended complaint must be dismissed, because he requests the Court to review the church's authority to exclude him from attending services, which is purely an internal matter for the church to resolve.

### IV.

Plaintiff claims that enforcement of Okla. Stat. tit. 21, § 915 and City of Tulsa Revised Ordinance tit. 27, § 2106 violates several of his constitutional rights. Plaintiff alleges that all defendants have violated the Free Exercise, Establishment, and Free Association Clauses of the First Amendment by imprisoning him for trespassing. He claims that the trespassing laws are unconstitutionally vague and violate the Due Process Clause of the Fourteenth Amendment. Lastly, plaintiff claims that he has been denied the equal protection of the law under the Fourteenth Amendment.

### A.

Plaintiff claims that he has been denied the right to worship at a church of his own choosing in violation of the Free Exercise Clause. However, enforcement of Oklahoma and local trespassing statutes does not infringe on plaintiff's right of free exercise under the First Amendment.

Although the Free Exercise Clause provides "absolute protection to religious thoughts and beliefs, the free exercise clause does not prohibit Congress and local governments from validly regulating religious conduct." Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 783 (10th Cir. 2005) The trespassing statutes at issue are both neutral statutes of general applicability, as they do not have the purpose or effect of burdening a particular religious belief. See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520 (1993). The Free Exercise Clause does not "relieve an individual of the obligation to comply with a 'valid and neutral law of

general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." Employment Div. v. Smith, 494 U.S. 872, 879 (1990). The Tenth Circuit has stated that "*Smith* creates a 'safe harbor'- if the law is 'a valid and neutral law of general applicability,' then it must simply be rationally related to a legitimate government end." United States v. Hardman, 297 F.3d 1116, 1126 (10th Cir. 2002).

Plaintiff asks the Court to review his free exercise claim using strict scrutiny, claiming that the defendants need to prove a compelling state interest to uphold the application of the trespassing laws in this case. However, the statutes are facially neutral towards religion and plaintiff has offered no evidence that the laws were enacted with a discriminatory purpose. Axson-Flynn v. Johnson, 356 F.3d 1277 (10th Cir. 2004); O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 342 U.S. 1170, 1176 (10th Cir. 2003). Therefore, the Court will not find the state trespassing laws unconstitutional if they merely have the effect of incidentally burdening plaintiff's practice of religion.

Plaintiff claims that he has been denied the right of free of exercise, because he does not have absolute freedom to attend any church where he desires to worship. However, the trespassing laws do not inhibit plaintiff's exercise of his religious belief or infringe upon his right to worship in his chosen religion. Plaintiff was prosecuted under Okla. Stat. tit. 21, § 915, which states that "[e]very person who wilfully disturbs, interrupts or disquiets any assemblage of people met for religious worship, by any of the acts of things hereinafter enumerated, is guilty of a misdemeanor." The City defines trespassing as "each and every actual entry upon the premises of another person's real property, public or private, without the owner's or occupant's consent thereof, whether expressed or implied." City of Tulsa Revised Ordinances tit. 27, § 2106. The statute does not prevent any

7

person from exercising his religious beliefs; in fact, the statute protects worshipers from disturbances of the peace. There is no restriction on the free exercise of plaintiff's religious beliefs, even if plaintiff is no longer welcome to worship at Woodland View. The statutes merely pose an incidental burden to plaintiff's practice of his religion, but neither statute actually prevents plaintiff from maintaining or expressing his religious beliefs. The trespassing laws, as neutral laws of general applicability, do not infringe upon plaintiff's right to the free exercise of his religious beliefs.

Plaintiff claims that the expenditure of City funds to prosecute and incarcerate him constitutes an establishment of religion in violation of the First Amendment. The Tenth Circuit still follows the three-part test established in Lemon v. Kurtzman, 403 U.S. 602 (1971), to adjudicate claims brought under the Establishment Clause.[2] Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1259 (10th Cir. 2005); O'Connor v. Washburn University, 416 F.3d 1216, 1223-24 (10th Cir. 2005). In order to pass the Lemon test, the statute must: (1) have a secular legislative purpose; (2) the primary effect of the statute must neither advance nor inhibit religion; and (3) the statute must not foster excessive entanglement between government and religion. 403 U.S. at 612-13.

The Court finds that plaintiff has not stated a claim for relief under the Establishment Clause. Plaintiff claims that the City has spent over $19,150 to keep him imprisoned for attempting to attend church. As applied to plaintiff, there is no indication that the trespassing laws were enforced in a way to endorse a particular religious practice. The purpose of the trespassing statutes is to keep the peace, not promote or discourage religious practice. The mere fact that the City responded to

---

[2] Tenth Circuit precedent recognizes that the Lemon test has come under attack, but the Tenth Circuit has held that Lemon has not been overruled. Summum v. City of Ogden, 297 F.3d 995, 1009 (10th Cir. 2002); Bauchman v. West High School, 132 F.3d 542, 551-53 (10th Cir. 1997).

Woodland View's request to remove plaintiff from its premises does not create an inference that the trespassing statutes were being applied to promote a religious viewpoint. Plaintiff's claim that the actions by the City and defendant Harris were intended to promote religion by taking Woodland View's side in a religious dispute is conclusory, and the enforcement of neutral civic laws in this case does not imply that any government actor took sides in a purely religious matter. Counts one, four, and six of plaintiff's amended complaint must be dismissed.

**B.**

Plaintiff claims he has been denied his right to freely associate with a church of his choice by the actions of Woodland View and the government defendants. The Supreme Court has recognized that the freedom to associate is protected by the First Amendment, because of the "close nexus between the freedoms of speech and assembly." National Ass'n for Advancement of Colored People v. Alabama, 357 U.S. 449, 460 (1958). However, in order for the freedom of association guaranteed by the First Amendment to apply, the government must impose some limit on a group's right to assemble or a group's right to exclude unwanted members. Boy Scouts of America v. Dale, 530 U.S. 640 (2000); Roberts v. United States Jaycees, 468 U.S. 609 (1984).

In this case, the church is the entity excluding plaintiff from group membership on the basis of its own internal policies. As discussed, the Court must abstain from involvement in a purely ecclesiastical dispute. The government defendants have not limited plaintiff's freedom of association by arresting him for trespassing. If the government had refused to arrest plaintiff, it would have denied Woodland View the right to peaceful association by failing to enforce civil laws protecting religious organizations from interference or disturbance. Plaintiff was not punished for attending church, nor were his First Amendment rights chilled by removing him from private

9

property when he had been repeatedly informed that Woodland View did not consent to his presence. There is no state action preventing plaintiff from exercising his freedom to associate in this case, and consequently no reason for the Court to become involved in this dispute. Count two of plaintiff's amended complaint is dismissed.

## C.

Plaintiff claims that Okla. Stat tit. 12, § 915 and City of Tulsa Revised Ordinance tit. 27, § 2106 are unconstitutionally vague as applied to him. He contends that government officials are given "unreasonable discretion" to prosecute citizens for trespassing and that the trespassing laws were enforced in an arbitrary manner in this case. A statute is impermissibly vague if "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Jordan v. Pugh, 425 F.3d 820, 824-25 (10th Cir. 2005) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000)). A law may be unconstitutionally vague if it tends to chill the exercise of First Amendment rights by causing citizens to "'steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'" Grayned v. City of Rockford, 408 U.S. 104, 109 (1972) (quoting Baggett v. Bullitt, 377 U.S. 360, 372 (1964)).

Plaintiff has brought an "as applied" challenge to local and state trespassing laws. Plaintiff was informed by Woodland View, a private organization, that he was no longer welcome to attend religious services. The Court has determined that Woodland View has the right to shun plaintiff without violating his right to free exercise and a reasonable person would know that he was trespassing on private property by returning to the church. Plaintiff claims that at least two juries came to different conclusions about whether plaintiff's conduct violated the statutes, which he uses

as evidence to support his claim that reasonable people could differ about the scope of the trespassing statutes. Even construing the facts in plaintiff's favor, this is a blatant misstatement of the facts. The City voluntarily dismissed two charges for trespassing and those charges never reached a jury. Okla. Stat. tit. 21, § 915 clearly prohibits any person from disrupting a religious service and the City trespassing ordinance prevents entry onto private property without consent of the owner. After Woodland View directly informed plaintiff not to return to the premises, he should have known that the church could remove him from church property with the help of local law enforcement. The Court finds no basis on which plaintiff could prevail on this claim, and count three of plaintiff's amended complaint is dismissed.

### D.

Plaintiff has brought an equal protection claim against Harris and the City, alleging that he was denied the equal protection of the law when the City prosecuted him for trespassing. The Court can not discern what classification the government has engaged in that would give rise to an equal protection violation, based on the allegations in plaintiff's amended complaint. Reading plaintiff's amended complaint very broadly, he alleges that he has been denied the right to attend the church of his choice and that state and City authorities have prosecuted him under the wrong statutes. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Ledbetter v. City of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003). The Supreme Court has not recognized church attendance as a fundamental right, nor is plaintiff a member of a protected class, so the Court must use a rational basis analysis in considering plaintiff's equal protection claim.

Under the rational basis test, the governmental action must be upheld if it is rationally related to a legitimate state interest. Powers v. Harris, 379 F.3d 1208, 1215 (10th Cir. 2004). The Tenth

Circuit has stated that if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification," the governmental policy will survive the rational basis test. Brown v. New Mexico State Personnel Office, 399 F.3d 1248, 1255 (10th Cir. 2005). Assuming that plaintiff were singled out and treated differently for his desire to attend Woodland View, the Court finds that the City's actions were rationally related to a legitimate interest in maintaining civil order. The City applied its trespassing laws in a reasonable manner, and Harris prosecuted plaintiff for legitimate violations of state and local statutes. Plaintiff has shown no basis for claiming he was denied the equal protection of the law and count five is dismissed.

**V.**

In addition to specific constitutional violations, plaintiff has brought claims under 42 U.S.C. §§ 1983 and 1985. As a preliminary matter, Woodland View is not a state actor and can not be sued under section 1983 or section 1985.[3] Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (1995). Under section 1983, the City may not be held vicariously liable for the actions of its employees, but can only be sued for official municipal policies that cause a constitutional violation. Monell v. Dep't of Soc. Servs. of City of New York, 691-92 (1978); Brown v. Reardon, 770 F.2d 896, 901 (10th Cir. 1985). Construing plaintiff's amended complaint broadly, plaintiff may be alleging that the City trespassing ordinance in part caused his injury.

---

[3] Plaintiff has not responded to Woodland View's argument that it is not a state actor. The Tenth Circuit recognizes four tests that may convert a private party into a state actor: the nexus test, the symbiotic relationship test, the joint action test, and the public functions test. Anaya v. Crossroads Managed Care Systems, Inc., 195 F.3d 584, 595-96 (10th Cir. 1999). Construing all of the allegations in the amended complaint as true, the Court can not find a colorable basis for any of the four tests to apply in this case.

However, even assuming all of the facts plead by plaintiff were true, plaintiff has not stated a section 1983 claim against the City or Harris. Plaintiff has no constitutional or statutory right to attend Woodland View if they have excluded him for religious differences. The Court has already addressed plaintiff's claims regarding unconstitutionality of the trespassing statutes and found no constitutional defect with the statutes. Plaintiff's allegations concerning Fourth Fifth, and Sixth Amendment violations are too vague to state a claim for relief. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."). Plaintiff's section 1983 claim must be dismissed for failure to state a claim upon which relief can be granted.

To state a claim for violation of section 1985, plaintiff must allege that two or more persons conspired to deprive plaintiff of his constitutional rights. Plaintiff does not specify which part of section 1985 defendants may have violated, but the only section that could potentially apply to the facts alleged by plaintiff is section 1985(3).[4] "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993). In cases where the alleged conspiracy was not racially motivated, the Tenth Circuit requires a plaintiff to plead that "the conspiracy is motivated

---

[4]   Section 1985(1) concerns a conspiracy to prevent an elected official from performing his duties or a conspiracy to discourage a person from seeking elected office. A violation of section 1985(2) involves a conspiracy to obstruct justice by intimidating a party, witness or juror.

by a class-based invidiously discriminatory animus, and that the conspiracy is aimed at interfering with rights that by definition are protected against private, as well as official encroachment." Id.

The Court can not find any allegations that the defendants engaged in class-based discrimination, nor is there any indication that a conspiracy between Harris and the City would have deprived plaintiff of a right protected against private and public encroachment.  The Court has already ruled that Woodland View had a right to shun plaintiff and that plaintiff has no constitutional right to demand entrance into a church that has excluded him based on an internal religious dispute. Plaintiff has alleged violations of the Fourth, Fifth and Sixth Amendment.  However, the claims are vague and are not supported by any factual allegations.  Plaintiff has not stated a claim for relief under section 1985(3), and count eight of plaintiff's amended complaint is dismissed.

## VI.

The Court finds that plaintiff has not asserted a cognizable claim for relief under any theory and his amended complaint must be dismissed in its entirety.[5]

---

[5] Since the Court has found that plaintiff's federal law claims are without merit, the Court declines jurisdiction over plaintiff's allegations that the defendants violated the Oklahoma Constitution by enforcing state and local trespass laws against him.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it had original jurisdiction.").

**IT IS THEREFORE ORDERED** that Defendants' [Woodland View Congregation of Jehovah's Witnesses, Harry Fennell, Marcus Hauge, Bill Cooper] Motion to Dismiss and Brief in Support (Dkt. # 29) is **granted**; Defendant City's Motion to Dismiss (Dkt. # 31) is **granted**; Motion to Dismiss of Defendant Tim Harris, in his Official Capacity and Brief in Support (Dkt. # 33) is **granted**. Plaintiff's Motion and Amended Motion for Preliminary Injunction (Dkt. ## 2, 28), and Plaintiff's Motion for Extension Time and for a Scheduling Conference to File Joint Status Report (sic) (Dkt. # 41), are **deemed moot**. **This is a final order terminating this case**.

**DATED** this 20th day of June, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT